**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KENNETH HIBBLER, | 3:08-cv-0062-RCJ (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| STATE OF NEVADA, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. # 81.)[1] Plaintiff has opposed (Doc. #94), and Defendants have replied (Doc. # 95). After a thorough review, the court recommends that Defendants' motion be granted.

**I. BACKGROUND**

At all relevant times Plaintiff Kenneth Hibbler (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC) at Northern Nevada Correctional Center (NNCC). (Pl.'s Compl. (Doc. # 7) 1[2], Defs.' Mot. for Summ. J. (Doc. # 81) 1.) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are the State of Nevada, Nevada Department of Corrections, Bruce Bannister, Greg Cox, Theodore D'Amico,

---

[1] Refers to the court's docket number.

[2] Page number references are to court docket page numbers.

Howard Skolnik, Rubin Vidaurri, and Glen Whorton. (Doc. # 7 1-2.) Plaintiff seeks compensatory and punitive damages as well as declaratory relief. (*Id.* at 6.)

Plaintiff alleges that when he was transferred to NNCC his medications were withheld by correctional staff, causing blood clots to form in his internal organs. (Doc. # 7 4.) Plaintiff alleges he was denied medications to prevent blood clots from forming, although he informed correctional staff that he was in urgent need of his medications. (*Id.* at 4-5.) The next morning, Plaintiff was taken to Carson-Tahoe Hospital and Plaintiff asserts that immediate surgery was recommended. (*Id.* at 5.) Plaintiff alleges the medical director of the prison refused to allow him to have surgery and he was taken back to NNCC. (*Id.*) Plaintiff alleges that in the following month, he lost forty pounds, as he was unable to eat anything without vomiting. (*Id.* at 5-6.) Plaintiff was taken back to Carson-Tahoe Hospital, where Plaintiff alleges doctors again recommended immediate surgery. (*Id.* at 6.) Plaintiff asserts that the prison medical director again refused to allow Plaintiff to have surgery. (*Id.*) Plaintiff returned to NNCC, where he claims he waited an additional thirty days before being approved for surgery. (*Id.*) During this time, Plaintiff experienced pain and suffering and lost additional weight. (*Id.*) Plaintiff claims Defendants denied him prompt medical care and were deliberately indifferent to his health in violation of the Eighth Amendment. (*Id.*)

In Count I, Plaintiff claims that Defendant Wharton, Director of NDOC, was responsible for conditions and operations at NNCC and the enforcement of the policy depriving inmates of personal property, including medications, for up to forty-eight hours. (Doc. # 7 at 7.) Plaintiff asserts that Defendant D'Amico, Medical Director at NNCC, was responsible for the denial of immediate medical treatment because he personally refused to adhere to the recommendation from emergency physicians to allow Plaintiff to undergo surgery and treatment of his blood clots. (*Id.*) Plaintiff alleges that D'Amico delayed his treatment for thirty days, resulting in severe damage to Plaintiff's arteries, heart, and stomach. (*Id.*) Plaintiff alleges that Defendant Cox, Assistant Director of NDOC, colluded with the other defendants to deprive Plaintiff of urgent medical care and treatment, and used the grievance

2

1  process to make false and unfounded assertions. (*Id.*) Plaintiff claims that Defendant
2  Vidaurri, Correctional Officer, refused Plaintiff's requests for his medication and access to
3  medical personnel. (*Id.* at 8.)
4      In Count II, Plaintiff alleges that he was disciplined by unnamed correctional officers
5  while he was ill and treated with deliberate indifference to his medical condition. (Doc. # 7
6  9.) Plaintiff asserts that after alerting Defendant Vidaurri of his need for medication, he was
7  engaged in verbal and physical assault by at least ten other correctional officers. (*Id.*) He
8  claims that the correctional officers delayed getting him to an ambulance to Carson-Tahoe
9  Hospital, worsening his condition. (*Id.*)

## II.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for

3

the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

4

that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III.  DISCUSSION

**A.   CLAIMS AGAINST THE STATE OF NEVADA AND NDOC**

The Eleventh Amendment bars suits against states as well as state agencies as they are considered an "arm of the state" and not a "person" for the purposes of section 1983. U.S. Const. amend. XI; *see also Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997), *amended*, 127 F.3d 1135 (9th Cir. 1997); *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836 (9th Cir. 1997); *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). Therefore, any claims against the State of Nevada and NDOC should be dismissed.

**B.   COUNT I- EIGHTH AMENDMENT**

Plaintiff alleges deliberate indifference to his medical needs because of a denial in receiving medication for two days and a delay in receiving surgery. (Doc. # 7.) Defendants contend that Plaintiff's claims that Defendants denied his medication and interfered with his immediate need for surgery are without merit. (Doc. # 81 9-12.)

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Supreme Court determined that deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and

5

wanton infliction of pain" proscribed by the Eighth Amendment. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle*, 429 U.S. at 104-105.

A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). A "serious" medical need exists if the failure to treat a prisoner's conditions could lead to further injury or the "unnecessary and wanton infliction of pain." *Id*. (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

If the medical needs are serious, the plaintiff must show that the defendant acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). The plaintiff must demonstrate that the prison medical staff knew of and disregarded an excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Toguchi*, 390 F.3d at 1061. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.3d at 1060. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992); *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989)(citations omitted). Where delay in

6

receiving medical treatment is alleged, however, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

On October 6, 2005, Plaintiff requested emergency medical assistance claiming denial of his Coumadin medication for two days. (Doc. # 81 4 at ¶ 2, Ex. D-2, D-15, D-27.) Plaintiff received his keep-on-person dose of Coumadin on October 7, 2005. (Doc. # 81 at ¶ 4, Ex. D-2, D-15.) After experiencing chest pain, Plaintiff requested emergency medical assistance on October 8, 2005, and was transferred to Carson-Tahoe Hospital. (Doc. # 81 at ¶ 6, D-28, D-33.) Plaintiff was seen by Dr. Solinger, who recommended further testing. (Doc. # 81 at ¶ 7, Ex. D-50.) Dr. Solinger specifically states that he did not believe there was an indication for an emergent endoscopy until further testing was performed. (Doc. # 81 Ex. D-50.) Plaintiff was released from Carson-Tahoe Hospital on October 9, 2005. (Doc. # 81 at ¶ 8, Ex. D-2, D-15.) On October 11, 2005, Plaintiff's treating physician at NDOC noted that Plaintiff required an angiogram. (Doc. # 81 at ¶ 9, D-36.) On October 13, 2005, Plaintiff requested emergency medical assistance for chest pains and was transferred to Carson-Tahoe Hospital. (Doc. # 81 at ¶ 10, Ex. D-4, D-17-18, D-29, D-36.) On October 14, 2005, Plaintiff's physician at Carson-Tahoe Hospital stated he would reserve judgment on the best course of treatment once Plaintiff's angiogram films were available. (Doc. # 81 at ¶ 11, Ex. D-58-62.) Plaintiff returned to NNCC on October 16, 2005. (Doc. # 81 at ¶ 12, Ex. D-4, D-18.) On October 17, 2005, Plaintiff's NDOC physician instructed staff to schedule an angiogram and believed Plaintiff may need an angioplasty. (Doc. # 81 at ¶ 13, Ex. D-4, D-19, D-37.) On October 22, 2005, Plaintiff reported he was unable to hold food or medication down. (Doc. # 81 Ex. D-30.) He was prescribed Ativan and stated that he felt better. (*Id*.) He refused to be admitted to the infirmary. (Doc. # 81 Ex. D-45.) On October 25, 2005, Plaintiff was examined by Great Basin Imaging. (Doc. # 81 at ¶ 14, D-42, D-63-64.) On November 3, 2005, an angiogram and angioplasty were scheduled. (Doc. # 81 at ¶ 15, Ex. D-6, D-21, D-40.) On November 8, 2005, the Utilization Review Panel approved Plaintiff's angioplasty and angiogram. (Doc. # 81 at ¶ 16, Ex. E.) On November 14, 2005, Plaintiff was transferred to Carson-Tahoe Hospital for

an angiogram and angioplasty which were completed without complications. (Doc. # 81 at ¶ 21, Ex. D-6, D-21.)

Assuming without deciding that Plaintiff's medical condition was serious, the court finds that no evidence indicates that Defendants exercised deliberate indifference towards Plaintiff's medical needs by delaying or withholding necessary medical treatment.  Instead, the evidence establishes that Plaintiff received responsive and appropriate health care during the period the alleged violation took place.

Initially, the court points out Dr. Karen Walsh's review of Plaintiff's medical records reveals that during the time period at issue, from October 6, 2005 and November 15, 2005, Plaintiff was observed, examined, or treated by NDOC medical staff at least thirty times. (Doc. # 81 Ex. B at ¶ 8.)

Plaintiff claims that he was denied his prescription for Coumadin for two days. Coumadin is an anticoagulant that is indicated for treatment of medical conditions to inhibit or delay clot formation. (Doc. # 81 Ex. A (Decl. of Dr. Robert Bruce Bannister) at ¶ 5.) According to Dr. Bannister, the need to perform Plaintiff's November 14, 2005 angioplasty and angiogram was not a result of Plaintiff going two days without Coumadin or the result of blood clotting. (*Id.* at ¶ 7.) Additionally, Plaintiff's medical records show that he received his Coumadin by at least October 7, 2008, which is a day before his alleged chest pains occurred on October 8, 2005. (*Id.* at ¶ 8.)

Plaintiff's claim that Defendants' delayed his need for immediate surgery is belied by the record. According to Defendant Bannister, if Plaintiff had required surgery before the Utilization Review Panel's November 8, 2005 meeting, the surgery would have been done without approval or delay. (Doc. # 81 Ex. A at ¶ 11.)  In addition, Plaintiff's treating physicians at Carson-Tahoe Hospital have authority to order immediate or urgent surgery without approval from NDOC. (*Id.*) While Plaintiff alleges that when he was transferred to Carson-Tahoe Hospital immediate surgery was recommended, the medical records do not indicate any such recommendation.  (*Id.* at ¶ 10.)  Instead, Carson-Tahoe Hospital

8

1 recommended further diagnostic testing and continued anticoagulation. (*Id.*) NDOC made
2 arrangements to conduct the tests. (*Id.*) Once the tests were conducted, Plaintiff was referred
3 for an angiogram and angioplasty, which was conducted without complications. (Doc. # 81
4 at ¶ 21, Ex. D-6, D-21.)

5       In his opposition, Plaintiff merely presents conclusory statements that Defendants
6 denied him appropriate medical care and that Defendants have misrepresented events and
7 concealed records. (Doc. # 94 Pl.'s Affidavit.) Plaintiff cannot avoid summary judgment by
8 relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*
9 *List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, he is required to set
10 forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*
11 Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324. Plaintiff has failed to raise a genuine issue of
12 material fact, and as a result, summary judgment should be granted.

13 **C.    COUNT II**

14       Count II is asserted against unnamed correctional officers. (Doc. # 7 9.) Plaintiff
15 alleges that these unnamed correctional officers verbally and physically assaulted him. (*Id.*)
16 He also alleges that they delayed getting him an ambulance to Carson-Tahoe Hospital,
17 worsening his condition. (*Id.*)

18       A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the
19 actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.
20 *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362
21 (1976). The Ninth Circuit has held that "[a] prison 'subjects' another to the deprivation of a
22 constitutional right, within the meaning of § 1983, if he does an affirmative act, participates
23 in another's affirmative acts, or omits to perform an act which he is legally required to do that
24 causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743
25 (9th Cir. 1978) (citation omitted).

26       In addition, supervisory personnel are generally not liable under § 1983 for the actions
27 of their employees under a theory of *respondeat superior*. When a named defendant holds

28

9

1  a supervisory position, the causal link between him and the claimed constitutional violation
2  must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher*
3  *v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). It must be shown that a supervisory defendant
4  either: personally participated in the alleged deprivation of constitutional rights; knew of the
5  violations and failed to act to prevent them; or promulgated or implemented a policy "so
6  deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force
7  of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*
8  *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Because Plaintiff has not tied the allegations in Count II to any particular defendant, summary judgment should be granted.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' motion for summary judgment (Doc. # 81).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: March 3, 2011.

_____
UNITED STATES MAGISTRATE JUDGE